## OHAN KORJIAN *vs.* RAHAN GARABEDIAN *et als.*

### DECEMBER 24, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, and Condon, JJ.

PER CURIAM. This is a bill in equity to reach certain property that the complainant claims was transferred by

Rahan Garabedian to Kevork Sahagian in fraud of the complainant's rights as a creditor. The only respondent before us is Sahagian, who appealed from a decree of the superior court, granting the relief prayed for by the complainant, on the ground that the decision of the trial justice is against the law and the evidence and the weight thereof.

The complainant is an illiterate man, about sixty-five years of age, who runs a small grocery store in the city of Providence. Rahan Garabedian is the sister of Kevork Sahagian. Neshan Y. Marks, president of the United Pencil Company and a material witness in the case, is a first cousin of Mrs. Garabedian and lives at her home in this city.

On September 22, 1930, the United Pencil Company, a corporation, hereinafter referred to as the company, borrowed $2,000 from the complainant on a promissory note for one year payable in installments of $500 every three months. Mrs. Rahan Garabedian signed this note as a maker for the accommodation of the company at the request of her cousin, Marks.

Under a petition signed by Marks as president, the superior court appointed a receiver for the company on December 18, 1930, five days before the first installment on the note to the complainant came due. These proceedings were entered "settled" on December 22, 1930, at which time the first installment on the note was either paid or otherwise adjusted. The next installment was due March 22, 1931. On March 13, 1931, Marks, in behalf of the company, gave the complainant a chattel. mortgage for $3,000 on the company's property with the understanding, according to Marks' testimony, that $1,500 of this money was to be applied to the payment of the $1,500 that remained unpaid on the note of September 22, 1930, on which his cousin, Mrs. Garabedian, was a co-maker, and that the other $1,500 was to be used by the company for its own purposes. The complainant testified through an interpreter. The substance of his testimony is that he was

induced to take this chattel mortgage as a favor to "his friends" to help them with their creditors. He further testified that he gave them the $3,000 in the form of a bank check through one Michael Atamian. Atamian, who was called as a witness by the respondents, admitted that he received the check from the complainant and stated that he first had the check endorsed by the company and then cashed it and put the money in his own account. The complainant also testified that when he realized that he had made "a mistake" he demanded and received his money from Atamian and on March 24, 1931, he discharged the chattel mortgage from the company.

In the instant case, Sahagian seeks to take advantage of this situation and claims that the note of September 22, 1930, was extinguished when the complainant accepted the chattel mortgage from the company, and that in any event the complainant has precluded himself from any relief in equity because of his participation in a scheme to defraud the creditors of the company. These contentions are clearly without merit and require no comment other than that Marks and the company tried to take undue advantage of an illiterate and elderly man when they attempted to pay him the balance of the note with his own money and to free Mrs. Garabedian from any personal liability by substituting for that note the chattel mortgage of a concern that was then on the verge of bankruptcy.

Returning to the evidence in the case, we find that on March 19, 1931, the superior court again appointed a receiver for the company. The following day a creditor's petition in bankruptcy was filed against the company, and on April 6 it was adjudged a bankrupt and a receiver was appointed by the federal court, who immediately took possession of all the assets of the bankrupt then in the custody of the receiver of the state court. By deed dated July 15, 1931, Mrs. Garabedian transferred to Sahagian the real estate that she owned on September 22, 1930, when she became a co-maker on the note of the company. In De-

cember 1931, the complainant brought suit against Mrs. Garabedian and certain other co-makers on his note and on January 9, 1932, judgment in that suit was entered in his favor for $1,711.67.

Sahagian's contention before us is that his sister transferred her real estate to him in payment of advances previously made to her and in her behalf; that he was ignorant of any intention on her part, if there was any, to defraud her creditors; and that he knew of no circumstances to put him on his inquiry and so charge him with notice of any such intention. The case presents a clear issue of fact to be determined mainly from the credibility of the witnesses and the probabilities to be reasonably inferred from the accepted testimony. While the evidence shows that Sahagian had made some payments for his sister at divers times, it also establishes quite definitely that she transferred the property to him with the intention, on her part at least, to avoid any payment on the note of September 22, 1930. The testimony of Manoog K. Atamian, Paul Nahabedian and of Rose Koyoumgian, a close friend of Mrs. Garabedian and a most reluctant witness for the complainant, to the effect that Mrs. Garabedian had expressed such an intention to them before and after the transfer to her brother, will not be disregarded by us, especially since it was accepted by the trial justice.

It is quite clear from the evidence that Sahagian, Marks and Mrs. Garabedian were on intimate terms and that Marks, who was connected with a number of enterprises, acted as a kind of business advisor, at least for Mrs. Garabedian. Whether or not Sahagian knew or had reasonable ground to know the real reason why his sister transferred her property to him must of necessity be gathered from all the circumstances in the case. On July 15, 1931, two installments on the note remained unpaid, the company was in bankruptcy, and the last installment was about to become due. It may be conceivable yet it is difficult to believe that, notwithstanding the close relationship of these persons

and their constant contact with each other in a business way as well as socially, Sahagian did not know that his sister had signed the note of the company at Marks' request. Where, as in this case, closely related persons are living together and are on intimate terms with each other, it is very difficult to prove actual notice in a matter of intention by direct evidence from the parties themselves. The true situation in most, if not all such cases, can only be inferred from circumstances and probabilities.

The trial justice in this case found that "Sahagian did have knowledge of the transactions that were taking place" and that he took a transfer of Mrs. Garabedian's real estate to protect her against loss under the note that she had signed as co-maker on September 22, 1930. A consideration of the entire record does not warrant us in saying that the trial justice, who had a better opportunity to appraise the credibility of the witnesses as they testified, was not justified in reaching the conclusion that he did. We have repeatedly held that on conflicting evidence we will not disturb the findings of fact by the trial court unless such findings are clearly erroneous.

The appeal of the respondent is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Walter Johnson, Patrick P. Curran, Curran, Hart, Gainer & Carr*, for complainant.

*Judah C. Semonoff*, for respondent.